IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

ONEWEST BANK, FSB,

        Plaintiff,

    v.

J. RANDALL FARRAR; CHRISTOPHER
SALEM; WAYNE WAGNER; MARY
WAGNER; LOT 48A LLC; POOL PRO,
INC.; CREDIT ASSOCIATES OF MAUI,
LTD; JOHN and MARY DOES 1-20;
DOE PARTNERSHIPS, CORPORATIONS,
OR OTHER ENTITIES 1-20,

        Defendants.

Civ. No. 12-00108 ACK-KSC

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DEFAULT JUDGMENT, AND AN ORDER FOR INTERLOCUTORY DECREE OF FORECLOSURE

For the following reasons, the Court hereby GRANTS OneWest's Motion for Summary Judgment Against Defendants J. Randall Farrar, Christopher Salem, Wayne Wagner, Mary Wagner, and Lot 48A LLC, and for Summary Judgment and Default Against Defendant Credit Associates of Maui, Ltd., and for an Order for Interlocutory Decree of Foreclosure and for Entry of Final Judgment Pursuant to Fed. R. Civ. P. 54(b).

## FACTUAL BACKGROUND

This case arises out of two loans that Defendants J. Randall Farrar and Christopher Salem (together, "Borrowers") obtained from La Jolla Bank, FSB, which were secured by two

mortgages for each loan on two pieces of residential property in Hawaii.

## I.    The Loan Documents

### A.    The Promissory Notes

The first loan (the "Lower Road Loan") was in the amount of $990,000.00 and was made for the purpose of acquiring a 984 square foot single family home located at 5106 Lower Honoapiilani Road, Lahaina, Hawaii (the "Lower Road Property"). Both Salem and Farrar executed and delivered a promissory note, dated August 14, 2008, payable to La Jolla in connection with the Lower Road Loan (the "Lower Road Note"). (Pl.'s Concise Statement of Facts ("CSF"), Ex. A.)

The second loan (the "Hui Loan") was in the amount of $1,560,000.00 and was a refinance of an existing loan for a home located at 8 Hui Road, E. Lahaina, Hawaii (the "Hui Property"). On or about August 14, 2008, Salem and Farrar executed and delivered a second promissory note in the amount of $1,560,000.00, payable to La Jolla in connection with the Hui Loan (the "Hui Note"). (Pl.'s CSF, Ex. B.)

Under the terms of both Notes, interest accrued at a rate of 6.500% per annum for the first six months. Every six months thereafter, the interest rate adjusted based on the Federal Home Loan Bank 11th District Monthly Weighted Average Cost of Funds Index, plus a margin of 2.850%. (Pl.'s CSF, Exs. A

& B at 1.) Both Notes provide for an interest rate increase of 3.000% on the margin in the event of the Borrowers' default. (Id.) The Notes define default to include the failure to make timely payments, and provide for the assessment of a late charge for any delinquent payments. Specifically, under the terms of the Notes, the Borrowers will be charged 5.000% of the principal and interest overdue or $5.00, whichever is greater, if a payment is 16 days or more late. (Id.) Further, the Notes provide for the assessment of attorneys' fees and costs against the Borrowers if they default on the Notes. (Id.)

### B. The Mortgages

The Lower Road Loan and the Hui Loan are cross-collateralized, meaning both properties serve as collateral for both loans. Specifically, the Lower Road Loan is secured by a first-lien mortgage dated August 14, 2008, signed by Borrowers in favor of La Jolla, on the Lower Road Property. (Pl.'s CSF, Ex. C.) The Lower Road Loan is further secured by a second-lien mortgage dated August 14, 2008, signed by Borrowers and in favor of La Jolla, on the Hui Property. (Pl.'s CSF, Ex. D.) The Hui Loan is similarly secured by two separate mortgages: a first-lien mortgage on the Hui Property executed by the Borrowers in favor of La Jolla on August 14, 2008, (Pl.'s CSF, Ex. E), and a second-lien mortgage on the Lower Road Property, executed by the Borrowers in favor of La Jolla on August 14, 2008. (Pl.'s CSF,

Ex. F.) (Collectively, the four mortgages are referred to as the "Mortgages"). All four Mortgages were duly recorded in the Bureau of Conveyances for the State of Hawaii. (<u>See</u> Pl.'s CSF, Exs. C, D, E, F.)

**C.  Transfer of the Notes and Mortgages to OneWest**

On February 19, 2010, the Office of Thrift Supervision of the U.S. Department of the Treasury closed La Jolla and appointed the Federal Deposit Insurance Corporation ("FDIC") as Receiver for La Jolla. On the same day, OneWest entered into a Purchase and Assumption Agreement ("FDIC Agreement") with the FDIC, as Receiver for La Jolla, to purchase certain assets and limited liabilities formerly belonging to La Jolla. <u>See</u> OneWest Bank, FSB, Pasadena, California, Assumes All of the Deposits of La Jolla Bank, FSB, La Jolla, California, FDIC Press Release (Feb. 19, 2010), *available at* http://www.fdic.gov/news/news/press/2010/pr10034.html.

Pursuant to the FDIC Agreement, OneWest acquired all of La Jolla's rights and interests in connection with the Loans, including the security interests and the Notes. (Pl.'s CSF, Decl. of Indebtedness at ¶ 9.) The FDIC transferred both original Notes to OneWest,[1] (<u>see</u> Pl.'s CSF, Exs. G & H), and executed and

---

[1] Deutsche Bank, as custodial agent for OneWest, has been in possession of the original Notes since before the Complaint was filed in this action. (Pl.'s CSF, Decl. of Indebtedness at ¶ 10.)

delivered to OneWest assignments of mortgage transferring to OneWest all right, title, and interest in the four Mortgages and to all money due or to become due on the corresponding Notes. (Pl.'s CSF, Exs. I, J, K, L.) All four assignments of mortgage were duly recorded in the Bureau of Conveyances for the State of Hawaii. (See id.)

## II.  The Status of the Loans

Borrowers have not made any payments on the Lower Road Loan, as required by the Lower Road Note, since the payment that was due for May 1, 2010. (Pl.'s CSF, Decl. of Indebtedness at ¶ 13.) Similarly, Borrowers have not made any payments on the Hui Loan, as required by the Hui Note, since the payment that was due for February 1, 2010. (Id.) Under the terms of both Notes, the Borrowers' failure to remit payments due constitutes a default. (Pl.'s CSF, Exs. A & B at 1.)

On July 22, 2010, OneWest gave Borrowers written notice regarding the default of both Notes, acceleration of the debt, and OneWest's intention to foreclose if the defaults were not cured. (Pl.'s CSF, Ex. M, N.) Borrowers have nevertheless failed to cure the defaults. (Pl.'s CSF, Decl. of Indebtedness at ¶¶ 14-16.)

**PROCEDURAL BACKGROUND**

OneWest filed its Complaint and Notice of Pendency of Action in the Circuit Court of the Second Circuit for the State

of Hawaii on January 24, 2012. In addition to the Borrowers, the Complaint names as defendants other parties that may claim an interest in the Mortgaged Properties.[2] The Notice of Pendency of Action was recorded in the Bureau of Conveyances for the State of

---

[2] All liens held by the other defendants are junior to OneWest's liens. Defendants Wayne and Mary Wagner may claim an interest in the Mortgaged Properties by virtue of a mortgage dated August 27, 2009, and recorded in the Bureau of Conveyances for the State of Hawaii ("the Bureau") as Document No. 2009-136690, and a mortgage dated August 31, 2009, and recorded in the Bureau as Document No. 2009-136691. Defendant and junior lienholder Lot 48A LLC may claim an interest in the Mortgaged Properties by virtue of a Final Judgment Regarding Arbitration Award dated December 23, 2009, filed in the Circuit Court of the Second Circuit, State of Hawaii, S.P. No. 09-1-0040(3) and recorded in the Bureau as Document Nos. 2009-197979 and 2010-029579, and a Final Judgment Regarding Fees and Costs in Special Proceeding to Confirm Arbitration Award dated March 24, 2010, filed in the Circuit Court of the Second Circuit, State of Hawaii, S.P. No. 09-1-0040(3) and recorded in the Bureau as Document No 2010-045679 and 2010-045680, and a Writ of Execution dated February 23, 2010, filed in the Circuit Court of the Second Circuit, State of Hawaii, S.P. No. 09-1-0040(3) and recorded in the Bureau as Document No. 2010-052604. Defendant and junior lienholder Credit Associates of Maui, Ltd. may claim an interest in the Mortgaged Properties by virtue of a Default Judgment entered in the District Court of the Second Circuit, Lahaina Division, State of Hawaii, Civil No. DC Civil 10-1-0177, on October 15, 2010 and recorded in the Bureau as Document No. 2011-145162. (See Pl.'s CSF, Title Aff., Exs. A & B.) In addition to the liens held by the other defendants, OneWest's updated title search referenced an additional junior lien on both properties in the form of a "Deed to Trust" dated June 12, 2013 between Thomas and Jennie Lindsey as Grantors and Thomas and Jennie Lindsey as Trustees of the Kamaki Lindsey Trust as Grantees. (Amended Title Aff., Exs. A & B (Doc. No. 267).) Title Guaranty of Hawaii states that it "does not believe that the foregoing document has any valid or enforceable effect on the title to the land described herein. If a policy of title insurance is issued, Schedule B will not contain a reference to said document." (Id.) Thus, it appears Title Guaranty of Hawaii is willing to insure over the lien. Nevertheless, this lien must be noted in the published notice of foreclosure sale.

Hawaii on January 27, 2012. (Pl.'s CSF, Ex. O.) Defendant Salem

removed the action to this district court on February 23, 2012.[3/]

(Doc. No. 1.)

On December 19, 2012, OneWest filed a motion for

summary judgment seeking a decree of foreclosure in connection

with the Complaint. (Doc. No. 65.) Defendant Salem subsequently

filed a voluntary Chapter 11 bankruptcy petition in the United

State Bankruptcy Court, District of Hawaii, resulting in an

automatic stay of the instant lawsuit. See In re Salem, Case No.

13-00392 (Bnkr. Haw. Dec. 19, 2012). OneWest obtained relief from

the automatic stay in the bankruptcy proceeding on June 17, 2013.

See Order Granting Pl.'s Mot. for Relief from the Automatic Stay

Under 11 § 362 (Real Property) or, in the Alternative, Adequate

Protection (June 17, 2013) (Bankruptcy Dkt. No. 72).

On August 26, 2013, OneWest, Salem, and Farrar[4/]

_____

[3/] All named defendants were served with the Complaint;
Defendants Salem, Farrar, Lot 48A LLC, and the Wagners all filed
answers. (Doc. Nos. 6, 25, 29.) On April 20, 2012, the Clerk of
this district court entered default against Credit Associates of
Maui, Ltd. (Doc. No. 27.) Pool Pro was dismissed without
prejudice pursuant to the Notice of Partial Dismissal without
Prejudice of Plaintiff's Complaint as to Defendant Pool Pro,
filed on May 23, 2012. (Doc. No. 32.)

[4/] The Wagners were given notice of the settlement
conference but did not attend; however, they participated in the
drafting of the Settlement Agreement and consented to the terms
set forth therein. Specifically, the Wagners stated that they
would agree to a global settlement that included payment of
$50,000 in return for their release of lien on the Hui Property
and Farrar's release of his interest in the Mortgaged Properties.
(continued...)

participated in a settlement conference and placed a settlement

on the record before Magistrate Judge Kevin S. C. Chang.[5/] (Doc.

Nos. 140, 142.) In light of the settlement, OneWest's summary

judgment motion was vacated. (Doc. No. 141.) Defendant Salem

failed, however, to sign the Settlement Agreement and to

---

[4/](...continued)
(See Ex. 2 to Settlement on the Record (Doc. No. 142).)

[5/] The settlement on the record contained the following
terms: (1) the parties agreed to execute a written settlement
agreement (the "Settlement Agreement") within 14 days from August
26, 2013; (2) there would be a global settlement among the
parties; (3) Salem would execute a deed in lieu of foreclosure
for the Hui Property free and clear of all liens, including the
Wagner Mortgage, the Lot 48A liens and any other liens on the
property, except for the OneWest mortgages; (4) The Wagners
release any and all claims against OneWest in connection with the
foreclosure; (5) The Wagners release Farrar personally and
release their lien on the Hui Property in exchange for (i)
payment of $50,000.00 from Salem and (ii) Farrar's release of all
interest in the Hui and Lower Road Properties; (6) Salem would
pay $575,000 to OneWest on the loan for the Lower Road Property;
(7) Salem would deliver a release of Lot 48A liens by the hearing
date on OneWest's motion in Bankruptcy Court to approve the
Settlement Agreement; (8) Salem would provide proof of funds for
payment to OneWest for the Lower Road Property, and a
representation that the funds were not from his bankruptcy
estate; (9) OneWest would issue 1099s to Salem and Farrar for the
Hui and Lower Road Properties; (10) Salem would file a withdrawal
of his opposition to OneWest's summary judgment motion; (11) the
parties would execute a stipulated decree of foreclosure order
and judgment for the Hui Property, which OneWest could then file
if Salem failed to fulfill the terms of the Settlement Agreement;
(12) Salem, Farrar, and the Wagners release all claims against
OneWest relating to the subject loans or properties; (13) Salem
would have the right to pursue an administrative claim with the
FDIC as receiver pursuant to 12 U.S.C. § 1821(d) for monies the
FDIC may recover from third parties for acts or omissions by La
Jolla Bank; (14) OneWest will waive its deficiency rights against
Salem and Farrar; (15) the settlement is subject to Bankruptcy
Court approval; and (16) OneWest will file its motion to approve
settlement in Bankruptcy Court. (See Doc. No. 171 at 7-8.)

otherwise comply with the settlement on the record. Finding the settlement to be valid and enforceable, on October 31, 2013, Magistrate Judge Chang issued his Findings and Recommendations Granting Plaintiff's Motion to Enforce Settlement Agreement. (Doc. No. 171.) There being no objections to the Findings and Recommendation, this Court issued its order adopting them on November 19, 2013. (Doc. No. 173 ("Order to Enforce Settlement").) Defendant Salem, now proceeding pro se, is currently appealing this order to the Ninth Circuit. (Doc. No. 174.) Pursuant to the Order to Enforce Settlement, this Court retained jurisdiction to ensure Salem's compliance with the Order.[6/]

On April 9, 2014, OneWest filed the instant Motion for Summary Judgment Against Defendants J. Randall Farrar, Christopher Salem, Wayne Wagner, Mary Wagner and Lot 48A LLC, and Default Judgment Against Defendant Credit Associates of Maui, Ltd, and for an Order for Interlocutory Decree of Foreclosure and

---

[6/] On January 9, 2014, the Ninth Circuit denied Salem's Motion to Stay the District Court's Proceedings Pending Appeal, confirming that the pending appeal in the Ninth Circuit does not divest this Court of jurisdiction to supervise compliance with the order being appealed. (See Doc. No. 207.) Pursuant to the Order to Enforce Settlement, Salem was required, inter alia, to execute the written Settlement Agreement incorporating the terms from the settlement on the record. Defendant Salem failed to comply with the Order to Enforce Settlement, and on February 18, 2014, this Court issued its Order Adopting Magistrate Judge's Finding and Recommendation to Grant Plaintiff's Motion for an Order for Defendant Christopher Salem to Show Cause Why He Should Not Be Held in Civil Contempt. (Doc. No. 223.)

for Entry of Final Judgment pursuant to Fed. R. Civ P. 54(b).[7/] (Doc. No. 232.) The motion was supported by a concise statement of facts, as well as numerous exhibits. (Doc. No. 233.) On May 29, 2014, Defendant Farrar filed his Limited Opposition to OneWest's motion, opposing the motion only to the extent that OneWest seeks a deficiency judgment. (Doc. No. 246 ("Farrar Opp'n".) Defendant Salem also filed an opposition to the motion, supported by a concise statement of facts and numerous exhibits, on May 30, 2014.[8/] (Doc. Nos. 248, 249 ("Salem Opp'n").) The remaining defendants, the Wagners, Lot 48A LLC, and Credit Associations of Maui, Ltd., did not file responses to the motion. OneWest filed its reply on June 5, 2014. (Doc. No. 253.)

A hearing on the motion was originally set for June 19, 2014. During that hearing, Defendant Salem requested a one week continuance to give his new attorney time to prepare. The Court therefore continued the hearing to June 30, 2014. (Doc. No. 266.) Twenty minutes before the June 30, 2014 hearing commenced, however, Defendant Salem filed a Chapter 11 Petition in the Bankruptcy Court for the District of Hawaii, thereby triggering

---

[7/] On April 30, 2014, the Court granted OneWest's Ex Parte Motion to Advance Time for Hearing. (Doc. No. 240.)

[8/] Salem's opposition was untimely and violated Local Rule 10.2 (dealing with the form of submissions) in a number of ways. Because Salem is proceeding pro se, the Court will nevertheless consider it. The Court cautions Salem, however, that further filings in violation of the Local Rules and the Court's deadlines will not be permitted.

an automatic bankruptcy stay. The Court therefore stayed the hearing and the case until the lifting of the bankruptcy stay. (Doc. No. 270.) On September 9, 2014, OneWest notified the Court that the bankruptcy stay had been terminated as a result of the Bankruptcy Court granting OneWest's Motion to Dismiss Bankruptcy Case. (Doc. No. 274.) The Court therefore held a hearing on the instant Motion on October 6, 2014.[9]

**STANDARD**

**I.    Summary Judgment**

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Broussard v. Univ. of Cal. at Berkeley, 192 F.3d 1252, 1258 (9th Cir. 1999).

_____

[9] The Court notes that on June 12, 2014, Defendant Salem filed a Motion for Continuance of One West Bank's Motion for Summary Judgment, in which Salem asked the Court to delay ruling on the summary judgment motion, apparently for the purpose of allowing the Magistrate Judge time to rule on Salem's Motion to Compel Production of Documents. (Doc. No. 254.) On September 25, 2014, however, the Magistrate Judge issued his Order Denying Defendant Christopher Salem's Motion to Compel Production of Documents. (Doc. No. 284.) Counsel for Salem therefore withdrew the Motion for Continuance during the hearing held on the instant Motion on October 6, 2014.

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." <u>Soremekun v. Thrifty Payless, Inc.</u>, 509 F.3d 978, 984 (9th Cir. 2007) (citing <u>Celotex</u>, 477 U.S. at 323); <u>see also</u> <u>Jespersen v. Harrah's Operating Co.</u>, 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56 [(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a genuine issue for trial." <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>, 475 U.S. 574, 586–87 (1986) (citation and internal quotation signals omitted); <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247–48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." <u>In re Barboza</u>, 545 F.3d 702, 707 (9th Cir. 2008) (citing <u>Anderson</u>, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences

on behalf of the nonmoving party. <u>Matsushita Elec. Indus. Co.</u>,
475 U.S. at 587; <u>see also</u> <u>Posey v. Lake Pend Oreille Sch. Dist.</u>
<u>No. 84</u>, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the
evidence of [the nonmovant] is to be believed, and all
justifiable inferences are to be drawn in his favor" (citations
omitted)).

## II. Special Considerations for Pro Se Litigants

Defendant Salem is proceeding pro se. The Ninth Circuit
has repeatedly cautioned that pro se litigants must be treated
with liberality. <u>See, e.g.,</u> <u>Waters v. Young</u>, 100 F.3d 1437, 1441
(9th Cir. 1996) ("As a general matter, this court has long sought
to ensure that pro se litigants do not unwittingly fall victim to
procedural requirements that they may, with some assistance from
the court, be able to satisfy.") Thus, when considering a motion
for summary judgment against a pro se plaintiff, the Court must
consider as evidence the pro se party's contentions offered in
motions and pleadings, where such contentions are based on
personal knowledge and set forth facts that would be admissible
in evidence, and where the pro se party attested under penalty of
perjury that the contents of the motions or pleadings are true
and correct. <u>Jones v. Blanas</u>, 393 F.3d 918, 923 (9th Cir. 2004).

Nonetheless, pro se litigants must follow the same
rules of procedure that govern other litigants. <u>King v. Atiyeh</u>,
814 F.2d 565, 567 (9th Cir. 1987). "Ignorance of court rules does

not constitute excusable neglect, even if the litigant appears pro se." <u>Swimmer v. IRS</u>, 811 F.2d 1343, 1345 (9th Cir. 1987). The court is not required to provide a non-prisoner pro se litigant with notice of the summary judgment rules. <u>Bias v. Moynihan</u>, 508 F.3d 1212, 1223 (9th Cir. 2007).[10/]

---

[10/] Here, OneWest asks the Court to strike a number of exhibits Defendant Salem attached to his concise statement of facts. Specifically, OneWest argues that Exhibits 1 through 5, as well as Exhibits D, E, G, H, J, Q, R, and S are all improperly before the Court. (Reply at 8.) Generally, in cases involving a party proceeding pro se, the Court must consider as evidence the pro se party's contentions offered in motions and pleadings where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where the pro se party attested under penalty of perjury that the contents of the motions or pleadings are true and correct. <u>Jones v. Blanas</u>, 393 F.3d 918, 923 (9th Cir. 2004). With respect to Exhibits 1 through 5 (the Declarations of Wayne Wagner and Bond Rowe, Salem's March 8, 2014 letter to Indy Mac Mortgage Services, and Salem's then-attorney's correspondence regarding the settlement agreement), OneWest argues that they should be stricken as improperly authenticated. As OneWest points out, they are referenced in Salem's memorandum in opposition, but not in his declaration and, as such, it appears that he has failed to attest under penalty of perjury that they are true and correct. As such, these exhibits are not properly before the Court and are stricken. <u>See</u> <u>Jones</u>, 393 F.3d at 923. OneWest also asks the Court to strike the following exhibits: Exhibit D (the La Jolla Bank Underwriting Analysis), Exhibit E (the Hui Loan Application), Exhibit G (a copy of the first page of the Hui Road Mortgage), Exhibit H (a November 5, 2008 Interoffice Memo and December 2, 2008 Memorandum both regarding workout options), Exhibit J (a September 17, 2010 Notice of Foreclosure from RCO Hawaii, LLLC), Exhibit Q (March 2011 email correspondence between Salem and a OneWest employee), Exhibit R (April 2011 email correspondence between Salem and OneWest regarding a possible purchase offer), and Exhibit S (a Purchase Contract purportedly offering to purchase the Hui Property, as well as more email correspondence regarding workout options). OneWest correctly notes that Exhibits E, G, Q, R, and S all appear to be incomplete. Local Rule 56.1(c) states that, for documents the parties reference in their concise statements of

(continued...)

**DISCUSSION**

In the instant motion, OneWest seeks to foreclose on the Mortgages. Specifically, OneWest seeks judgment pursuant to Federal Rule of Civil Procedure 56 in OneWest's favor against Defendants Farrar, Salem, the Wagners, and Lot 48A LLC, as well as default judgment in favor of OneWest against Credit Associates of Maui, Ltd. OneWest further seeks an interlocutory decree of foreclosure in favor of OneWest as to all claims and all parties.

**I.    Foreclosure**

In general, there is no federal foreclosure law; rather, state law serves as the law of decision in foreclosure actions. See Whitehead v. Derwinski, 904 F.2d 1362, 1371 (9th Cir. 1990), *overruled on other grounds by* Carter v. Derwinski, 987 F.2d 611 (9th Cir. 1993). Under Hawaii law, a court may issue

---

[10]/(...continued)
facts, "[t]he parties may extract and highlight the relevant portions of each referenced document, but shall ensure that enough of a document is attached to put the matter in context." Here, it does not appear that Salem has made any attempt to alert the Court to the fact that the documents are incomplete, or to provide a full context in which to view the portions of the documents he does provide. The Court therefore strikes these exhibits. Based on Salem's somewhat confusing Declaration, it appears that he was himself served with the Notice of Foreclosure (Exhibit J), thus, the Court will not strike this exhibit. As for Exhibits D and H, which both appear to be documents created by La Jolla Bank and OneWest employees, respectively, the Court likewise strikes these exhibits, as Salem has not properly authenticated these documents or attested to their truth and accuracy. In sum, the Court strikes Exhibits D, E, G, H, Q, R, and S. The Court notes, however, that even were it to consider these exhibits, it would nevertheless still conclude that OneWest has established its entitlement to foreclose.

a foreclosure decree when the moving party establishes all four of the following: (1) the existence of a promissory note, mortgage, or other debt agreement; (2) the terms of the promissory note, mortgage, or other debt agreement; (3) default by the borrower under the terms of the promissory note, mortgage, or other debt agreement; and (4) the giving of the cancellation notice and recordation of an affidavit to such effect. See IndyMac Bank v. Miguel, 184 P.3d 821, 835 (Haw. Ct. App. 2008) (citing Bank of Honolulu, N.A. v. Anderson, 654 P.2d 1370, 1375 (Haw. Ct. App. 1982)); see also Haw. Rev. Stats. §§ 667-1 *et seq.* (providing for foreclosure by court action). The party seeking to foreclose must provide evidence of default, but need not determine a sum certain before obtaining a decree of foreclosure. Miguel, 184 P.2d at 835 (citing Anderson, 654 P.2d at 1374).

Here, OneWest has made a prima facie case that it is entitled to foreclose on the four Mortgages. First, OneWest has demonstrated the existence and terms of the promissory notes and mortgages: the Court has before it the Notes executed by the Borrowers evidencing their indebtedness to La Jolla (as well as evidence that the loans were later sold to OneWest pursuant to the FDIC Agreement), as well as the four Mortgages constituting OneWest's interest in the Mortgaged Properties as security for the Notes. (See Pl.'s CSF, Exs. A & B (the two Notes); C, D, E & F (the four Mortgages).) Thus, there is no factual dispute as to

the existence of the parties' agreements, or the terms of the Notes and Mortgages.

Further, OneWest has proffered evidence that the Borrowers are currently in default under the loan documents for failure to make required payments. (See Pl.'s CSF, Decl. of Indebtedness at ¶ 13.) Pursuant to the terms of the Mortgages, in the event of the Borrowers' failure to make timely payments, the lender had the right to declare the indebtedness immediately due and payable and to proceed to foreclose judicially or nonjudicially. (Pl.'s CSF, Exs. C, D, E & F at 4-5.) The Borrowers do not appear to dispute that they have not made any payments on the Hui Loan since the payment due for February 1, 2010, and on the Lower Road Loan since the payment due for May 1, 2010. (See Pl.'s CSF, Decl. of Indebtedness at ¶ 13.) Under the terms of the Mortgages, a failure to make any payment when due constitutes an event of default. (Pl.'s CSF, Exs. C, D, E & F at 4.) Thus, OneWest has shown that the Borrowers are in default.

Finally, OneWest has demonstrated that it gave Borrowers notice of its intention to foreclose. Specifically, on July 22, 2010, OneWest sent Borrowers written notices concerning the default of both the Hui Note and the Lower Road Note, and informed the Borrowers of OneWest's election to accelerate the debt pursuant to the terms of the Notes, and to foreclose under loan documents if the default was not cured. (Pl.'s CSF, Exs. M &

N.) Notwithstanding the default notices, Borrowers have apparently not cured their default. (See Pl.'s CSF, Decl. of Indebtedness at ¶ 16.)

Based on these facts, the Court finds that OneWest has demonstrated that it is entitled to foreclose as a matter of law. Borrowers have offered no evidence that the loan documents are not valid, that they are not indebted to OneWest, or that they are not in default. Indeed, Defendant Farrar does not dispute OneWest's entitlement to foreclose, and opposes the instant motion only insofar as he seeks to clarify that OneWest is not seeking a deficiency judgment against him or Defendant Salem.[11/] (See Farrar Opp'n at 3-4.) All other defendants, with the exception of Defendant Salem, have not opposed the instant motion.

Defendant Salem argues, however, that issues of fact exist as to the terms and validity of the loan documents in light

---

[11/] Defendant Farrar notes in his memorandum in opposition that the Settlement Agreement expressly provided that OneWest waived its deficiency rights against Defendants Farrar and Salem. (Farrar Opp'n at 3; see also Settlement Agreement at 4-5.) Farrar has also produced a May 22, 2014 e-mail exchange between counsel for OneWest and counsel for Farrar in which OneWest's counsel states that "OWB is not seeking a deficiency in its [summary judgment motion]." (Farrar Opp'n, Ex. A.) Nevertheless, OneWest does request in the instant Motion that the Court "reserve jurisdiction" to, inter alia, "[e]nter a judgment for such deficiency as may be found in favor of OneWest and against Borrowers." (Mot. at 405.) During the hearing on the instant Motion, however, counsel for OneWest confirmed that it is not seeking a deficiency judgment against either Farrar or Salem.

18

of alleged violations of federal lending laws by La Jolla Bank. (See generally Salem Opp'n.) Further, Salem appears to argue that he engaged in discussions with La Jolla regarding possible loan workout options, including the sale of one of the mortgaged properties, and that OneWest's refusal to accept such a sale as part of a loan resolution constituted a breach of the agreement Salem had discussed with La Jolla. (Salem Opp'n at 13-15.) These arguments appear to simply reiterate those made in opposition to OneWest's first summary judgment motion that was filed shortly prior to the parties' August 26, 2013 settlement on the record and terminated after the settlement was reached. (See Doc. Nos. 132, 136, 138.)

Salem's arguments must fail for several reasons. As an initial matter, pursuant to the Settlement Agreement, which this Court has found is valid and enforceable, (see Order to Enforce Settlement (Doc. No. 173),) OneWest has a right to foreclose as a remedy in the event of Salem's breach.[12/] (See Doc. No. 156, Ex. R (Settlement Agreement) at 12, § E.2.) As discussed above, Salem has failed to sign the Settlement Agreement or otherwise comply with its terms, and has therefore defaulted under the terms of

---

[12/] While under the terms of the Settlement Agreement OneWest had agreed to foreclose only on the Hui Property, and to cancel the Lower Road Note in exchange for, *inter alia*, a partial payment of $575,000, (see Doc. No. 156, Ex. R at 9-10,) because Salem has entirely failed to comply with that agreement, OneWest is now exercising its entitlement to foreclose on both properties.

the agreement. OneWest is therefore entitled to foreclose. (<u>Id.</u> (stating that OneWest's remedies upon default include its entitlement to "proceed with the Lawsuit to foreclose the Mortgages [and] pursue any other remedy available to OneWest under the Loan Documents or at law or in equity.").)

Further, leaving aside OneWest's remedies under the Settlement Agreement, Salem has altogether failed to raise any issue of fact as to OneWest's entitlement to foreclose as a matter of law under the terms of the Notes and Mortgages. Salem does not appear to dispute the existence and terms of the Notes and Mortgages, the fact that the Borrowers are in default, or the fact that OneWest provided notice of its intention to foreclose. (<u>See generally</u> Salem Opp'n.) Rather, Salem appears to acknowledge his default, but argue that OneWest is somehow responsible for the default because it allegedly rejected offers by Salem to sell one of the properties to pay off the loans, and would not cooperate with Salem's proposed refinancing of the properties. (Salem Opp'n at 11-15.) This argument must fail, however, because OneWest was under no obligation to modify the terms of Salem's loans.

While Salem and OneWest may have been attempting to negotiate some sort of loan modification, Salem has produced no evidence suggesting that the parties ever came to any such agreement. Any discussions the parties may have had about workout

options did not affect OneWest's ability to foreclose or Salem's existing obligations under the Notes and Mortgages. See <u>Doran v. Wells Fargo Bank</u>, Civ. No. 11-00132 LEK-KSC, 2011 WL 5239738 at *9 (D. Haw. Oct. 31, 2011). Pursuant to the express terms of the Notes and Mortgages, and in light of the cross-collateralization of the two Loans, OneWest was entitled to demand payment in full for both Loans in order for Salem to obtain a full release of either Property. (<u>See</u> Pl.'s CSF, Exs. A, B, C, D, E & F (the Notes and Mortgages).) Salem has thus failed raise any genuine issue of material fact to suggest that he is not in default.

In sum, because OneWest has met all four requirements in making a prima facie showing that it is entitled to foreclose, and Borrowers have failed to "set forth specific facts showing that there is a genuine issue" of material fact, the Court finds that summary judgment in favor of OneWest as to foreclosure is appropriate. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986). As such, the Court GRANTS the motion insofar as it finds that OneWest is entitled to foreclose on the Mortgages pursuant to the two Notes.

## II. **Amount of Judgment**

OneWest asserts that it is entitled to judgment as a matter of law in the amount of the Borrowers' total indebtedness under the Notes, or $3,330,271.53. (Mot. at 17.) In his Declaration of Indebtedness, Jon Dickerson, Vice President of

OneWest Bank sets forth the following amounts due under the two Notes:

**Lower Road Note:**

| | |
|---|---|
| Unpaid Principal | $ 981,348.97 |
| Interest (4/1/2010 to 4/1/2014) | $ 255,150.72 |
| Late Charges | $ 869.40 |
| Escrow Advance | $ 30,654.08 |
| Recoverable Corporate Advance | $ 2,130.00 |
| *Sub-Total (Lower Road Note)* | $ 1,270,153.17 |

**Hui Note:**

| | |
|---|---|
| Unpaid Principal | $ 1,548,614.53 |
| Interest (1/1/2010 to 4/1/2014) | $ 427,804.83 |
| Late Charges | $ 2,739.96 |
| Escrow Advance | $ 78,314.04 |
| Recoverable Corporate Advance | $ 2,645.00 |
| *Sub-Total (Hui Note)* | $ 2,060,118.36 |

**Total**:                                          **$ 3,330,271.53**

An examination of the business records upon which this declaration relies, however, reveals some discrepancies between the figures in Dickerson's declaration and the figures set forth in OneWest's records. Specifically, OneWest's business records, while hardly models of clarity, appear to state that, as of April 1, 2014, the total amount due on the Lower Road Note is $1,274,472.33, and the total amount due on the Hui Note is $2,370,441.97. (See Pl.'s CSF, Ex. P (Lower Road Note records) at 11, Ex. Q (Hui Note records) at 16.) Together, this totals $3,644,914.30.

During the hearing on the instant Motion, however, counsel for OneWest explained that it is only seeking $3,330,271.53, an amount that does not include attorneys' fees

and certain fees and costs (including late fees that accrued after acceleration of the debt) that were automatically included in the calculations set forth in OneWest's business records. Counsel for OneWest confirmed that it is waiving its right to any late fees accrued after the time of acceleration of the loan, and that it will seek attorneys' fees and costs at the time it files a motion to confirm the sale of the Properties. Thus, OneWest asserts that the amount set forth in Dickerson's declaration is the correct amount of total indebtedness for which OneWest seeks judgment in the instant Motion. Omitting those amounts OneWest is not claiming in the instant Motion, it appears OneWest has demonstrated that the total amount due on both Notes is $3,330,271.53. Moreover, none of the defendants dispute this amount.

The Court therefore concludes that OneWest is entitled as a matter of law to judgment in the amount of $3,330,271.53.

### III. Default Judgment Against Credit Associates of Maui

Finally, OneWest seeks a default judgment against Defendant Credit Associates of Maui ("Maui Credit"). (Mot. at 18.) Maui Credit may claim an interest in the Lower Road and Hui Properties by virtue of a default judgment entered in the District Court of the Second Circuit, Lahaina Division, State of Hawaii, Civ. No. DC Civil 10-1-0177, on October 15, 2010, and recorded in the Bureau of Conveyances of the State of Hawaii as

Document Number 2011-145162. (See Pl.'s CSF, Title Aff., Exs. A & B.)

OneWest served the Complaint upon Maui Credit on February 8, 2012. (See Pl.'s CSF, Schiel Decl. ¶ 4; Doc. No. 27, Ex. A (Return and Acknowledgment of Service).) Maui Credit failed to timely respond to the Complaint and, as such, the clerk of this district court entered default against Maui Credit on April 20, 2012. (Doc. No. 27.)

Federal Rule of Civil Procedure 55 governs the entry of default by the clerk and the subsequent entry of default judgment by either the clerk or the district court. Rule 55 requires a "two-step process," consisting of: (1) seeking the clerk's entry of default, and (2) filing a motion for entry of default judgment. Eitel v. McCool, 782 F.2d 1470, 1471 (9th Cir. 1986); Symantec Corp. v. Global Impact, Inc., 559 F.3d 922, 923 (9th Cir. 2009). The entry of default against a defendant does not, however, entitle plaintiff to default judgment against that defendant as a matter of right. Valley Oak Credit Union v. Villages, 132 B.R. 742, 746 (9th Cir.1991); see also Fed. R. Civ. P. 55(b)(1), (2).

The Court considers the following factors in deciding a motion for default judgment: (1) the possibility of prejudice; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in

24

the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy favoring decisions on the merits. <u>Eitel</u>, 782 F.2d at 1471–72.

On default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." <u>TeleVideo Sys., Inc. v. Heidenthal</u>, 826 F.2d 915, 917–18 (9th Cir. 1987) (quoting <u>Geddes v. United Fin. Group</u>, 559 F.2d 557, 560 (9th Cir. 1977)). The allegations in the complaint regarding liability are deemed true, but the plaintiff must establish the relief to which it is entitled. <u>Fair Hous. of Marin v. Combs</u>, 285 F.3d 899, 906 (9th Cir. 2002).

Here, the Court finds that OneWest has demonstrated the appropriateness of an entry of a default judgment against Maui Credit. As discussed above, there is no question of fact as to OneWest's entitlement to foreclose: the Borrowers have been in default under the Notes and Mortgages since 2010, and OneWest will be prejudiced if Maui Credit's interest in the Properties is not extinguished and Maui Credit is not precluded from objecting to OneWest foreclosing against the Properties. The Complaint sufficiently alleges OneWest's claims regarding its right to foreclose, and the amount of money at stake for OneWest is substantial (several million dollars). Conversely, it appears Maui Credit's potential interest in the Properties (by virtue of

the default judgment recorded with the Bureau of Conveyances) is $5,063.75. (See Pl.'s CSF, Title Aff., Ex. A at Endorsement No. 2.) Further, because Maui Credit has never appeared in this action, there appears to be little possibility of a dispute over the materal facts, and there is no indication that its default was due to excusable neglect.

Finally, Maui Credit's failure to answer the Complaint makes a decision on the merits impractical, if not impossible. Under Rule 55, "termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action." PepsiCo., Inc. v. Cal. Security Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Here, Maui Credit has failed to defend this action and has consequently rendered adjudication on the merits before this Court impracticable.

In sum, the Court finds that the Eitel factors weigh in favor of entry of default judgment against Maui Credit. OneWest's motion is GRANTED insofar as it seeks default judgment against Maui Credit.

## CONCLUSION

For the foregoing reasons, the Court GRANTS OneWest's Motion for Summary Judgment Against Defendants J. Randall Farrar, Christopher Salem, Wayne Wagner, Mary Wagner, and Lot 48A LLC, and for Summary Judgment and Default Against Defendant Credit Associates of Maui, Ltd., and for an Order for Interlocutory

Decree of Foreclosure and for Entry of Final Judgment Pursuant to Fed. R. Civ. P. 54(b).

Within seven days of this Order, OneWest shall provide for the Court's approval and signature a proposed Foreclosure Decree setting forth the necessary terms and conditions to effectuate the foreclosure process. Within seven days of this Order, OneWest shall also submit to the Court and to all defendants the name and qualifications of a proposed foreclosure commissioner with experience in Maui County. If any defendant objects to OneWest's proposed commissioner, they may, within fourteen days of this Order, submit to the Court and to OneWest the name and qualifications of an alternative proposed commissioner.[13/]

Default judgment is hereby entered against Credit Associates of Maui, Ltd., and all right, title, and interest of Credit Associates of Maui, Ltd., in the Lower Road and Hui Properties, based on or arising out of the default judgment, are hereby forfeited.

---

[13/] In a separate order, the Court will make the final selection of an appropriate commissioner and provide the necessary directions regarding the foreclosure of the Notes and Mortgages.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 8, 2014



_____
Alan C. Kay
Senior United States District Judge

OneWest Bank, FSB v. J. Randall Farrar et al., Civ. No. 12-00108 ACK KSC,
Order Granting Plaintiff's Motion for Summary Judgment, Default Judgment, and
an Order for Interlocutory Decree of Foreclosure